## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CYNTHIA SCHICK, | No. 4:20-CV-01422 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| CARROLS CORPORATION t/a/d/b/a BURGER KING, | |
| Defendant, | |
| v. | |
| BEAUDETTE CONSTRUCTION COMPANY, INC., | |
| Third-Party Defendant, | |
| v. | |
| GBC DESIGN, INC., | |
| Third-Party Defendant. | |

## MEMORANDUM OPINION

### APRIL 29, 2022

## I.    BACKGROUND

In this diversity action, Plaintiff Cynthia Schick sued Carrols Corporation after she tripped and fell at a Burger King location.  In turn, Carrols filed a third-party complaint against Beaudette Construction Company, Inc., seeking contribution and indemnity under theories of negligence and breach of contract.  Then, Beaudette

filed a third-party complaint against GBC Design, Inc., again seeking contribution and indemnity. So GBC filed cross-claims for contribution and indemnity against Carrols and Beaudette. Finally, Carrols asserted a cross-claim against GBC for contribution.

After discovery, Carrols, Beaudette, and GBC each moved for summary judgment. These motions for summary judgment are now ripe for disposition. For the reasons below, they are denied in part and granted in part.

## II.   DISCUSSION

### A.   Standard of Review

The Court begins its analysis with the standard of review that undergirds summary judgment. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[1] The Supreme Court of the United States has advised that Federal Rule of Civil Procedure 56 "should be interpreted in a way that allows it to accomplish this purpose."[2] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is

---

[1]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[2]   *Id.* at 324.

[3]   Fed. R. Civ. P. 56(a).

correct."[4]  A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[5]   And a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[6]

A judge's task when "ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[7]  Thus, if "the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[8]

"The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."[9]  Part of the judge's role at this stage is to ask "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."[10]  In answering

---

[4]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[5]   *Clark*, 9 F.3d at 326.

[6]   *Id.*

[7]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[8]   *Id.*

[9]   *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252 (alterations in original)).

[10]   *Liberty Lobby*, 477 U.S. at 252 *(*quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)) (alteration and emphasis in original).

that question, the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[11]  The evidentiary record at trial will typically never surpass what was compiled during discovery.

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[12]  For example, while "at the motion-to-dismiss stage of proceedings a district court is obligated to accept the allegations in a plaintiff's complaint as true, it does not accept mere allegations as true at the summary judgment stage."[13]  The moving party must identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[14]  "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[15]

For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (1) citations to particular parts of materials in the record that go beyond mere allegations; (2) a showing that the materials cited do not establish the absence or presence of a genuine dispute; or (3)

---

[11] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[12] *Celotex*, 477 U.S. at 323.
[13] *Wiest v. Tyco Electronics Corp.*, 812 F.3d 319, 330 (3d Cir. 2016).
[14] *Id.* (internal quotations omitted).
[15] *Id.*

a display that an adverse party cannot produce admissible evidence to support the fact.[16]

Summary judgment is effectively "put up or shut up time" for the nonmoving party.[17] When the movant properly supports his motion, the nonmoving party must show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[18] The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[19] Instead, it must "identify those facts of record which would contradict the facts identified by the movant.'"[20] Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the Court may "consider the fact undisputed for purposes of the motion."[21] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[22]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether

---

[16]  Fed. R. Civ. P. 56(c)(1).
[17]  *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (Fisher, J.).
[18]  *Liberty Lobby*, 477 U.S. at 250.
[19]  *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
[20]  *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[21]  Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018).
[22]  Fed. R. Civ. P. 56(c)(3).

there is a genuine issue for trial."[23]  "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted."[24]

### B.    Undisputed Facts

With that standard outlining the framework for review, the Court now turns

to the undisputed facts.

Carrols Corporation owns and operates the Burger King located at 562 High

Street, Lock Haven, Pennsylvania.[25]    Carrols contracted with Beaudette

Construction Company to tear down and rebuild this Burger King location.[26]  GBC

Design designed the curb for this remodeling,[27] which was completed in July 2018.[28]

On August 12, 2018, Cynthia Schick entered the subject Burger King through

its front entrance.[29]  Schick had patronized this Burger King before, but not since its

remodeling.[30]   As Schick exited the Burger King through a side door, she fell,

injuring her right leg.[31]

### C.    Analysis

Schick sued only Carrols for premises liability.[32]  But Defendants' subsequent

claims and cross-claims rely in part on Schick's underlying premises-liability

---

[23]   *Liberty Lobby*, 477 U.S. at 249.
[24]   *Id*. at 249–50 (internal citations omitted).
[25]   Doc. 62 at ¶ 1.
[26]   *Id.* at 4.
[27]   Doc. 74 at 3, 6.
[28]   Doc. 62 at ¶ 5.
[29]   Doc. 56 at ¶¶ 1, 5.
[30]   *Id.* at ¶ 4.
[31]   *Id.* at ¶¶ 15, 26.
[32]   Doc. 1.

claims.    Accordingly, the Court will address these underlying premises-liability claims first.   Then, the Court will turn to the claims against Beaudette and GBC.

### 1.    Premises-Liability Claims

"The standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespassor, licensee, or invitee."[33] "The parties agree that [Schick] was an invitee on the day she was injured."[34] "Possessors of land owe a duty to protect invitees from foreseeable harm."[35]

"A plaintiff's ability to produce evidence of a dangerous or hazardous condition is the crux of a premises liability action involving a slip-and-fall."[36]  In her briefs opposing summary judgment, Schick identifies three such conditions: the curb's color, the lack of a handrail/guardrail, and the door signs.   The Court addresses each condition in turn.

### a.    Curb Color

First, Schick argues that "[t]he sidewalk and drive thru area are the same color, thus making it very difficult to visualize the step down."[37]  In support, Schick cites Albert Hill's deposition testimony that the curb "was not painted yellow" when he

---

[33]  *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983).

[34]  *Id.*

[35]  *Id.* at 185.

[36]  *Daniels v. Sears & Sears Roebucks & Co.*, No. CV 15-4821, 2016 WL 521205, at *3 (E.D. Pa. Feb. 10, 2016).

[37]  Doc. 69 at 1; Doc. 71 at 1.

slipped and fell in the Fall of 2018.[38]  Hill further testified that he "didn't notice the difference between . . . the sidewalk and the drive-through area."[39]

But Defendants adduce Assistant Manager Doreen Kissinger's testimony that "there was yellow paint on the curb area that extended past the doorway."[40] Kissinger also testified that a photograph showing a yellow curb "accurately depict[s] the sidewalk and the curb as they were on the date of this accident."[41] Kissinger's testimony that the curb was yellow conflicts with Hill's testimony that the curb was not yellow, creating a genuine dispute of material fact.

Carrols counters that the alleged danger was open and obvious because the curb was yellow and because there was a clear step-up from the drive-through lane to the sidewalk.  But as the Court explained above, a genuine dispute of material fact exists about whether the curb was yellow.  This precludes summary judgment on the basis that the curb's yellow color made the danger open and obvious.  Accordingly, summary judgment is denied as to Schick's premises-liability claims involving the curb's color.

### b.   Guardrail

Next, Schick argues that she "exited[] without the assistance of the metal hand rail/guard rail."[42]  Schick contends that such railing would "serve as a visual cue [of]

---

[38]  Doc. 71-1 at 20.
[39]  *Id.* at 19.
[40]  Doc. 56-2 at 13, 15.
[41]  *Id.* at 15.
[42]  Doc. 69 at 2; Doc. 71 at 2.

where to safe[l]y exit from the sidewalk" and "prevent her from walking directly off the sidewalk."[43]  Schick's expert, Bernard M. Telatovich, agrees.[44]

Beaudette counters that Schick testified that she only took one step before falling.[45]  And if Schick had taken only one step before falling, Beaudette argues that she would not have been near the curb at the time of her fall.  So Beaudette contends that a guardrail between the curb and the drive-through area would not have prevented Schick's accident and that Telatovich's opinion is speculative.

But Telatovich also opined that a guardrail would "direct pedestrians several feet to the left, to an area where the interface is clearly recognized and hazard risks are significantly reduced . . . ."[46]  Moreover, such a guardrail would be a "simple economic remedy."[47]  Viewing this evidence in the light most favorable to Schick, a reasonable juror could conclude that Defendants negligently failed to install a guardrail.[48]

---

[43]  *Id.*

[44]  *See* Doc. 71-2.

[45]  Doc. 56-1 at 10.

[46]  Doc. 71-2 at 8.

[47]  *Id.* at 6.

[48]  *See Dorfmeister v. Nordstrom, Inc.*, 415 F. Supp. 3d 537, 544 (E.D. Pa. 2019) ("There are issues of fact as to whether Nordstrom acted unreasonably in failing to provide a railing or other safety precaution. Whether a railing near the platform would have prevented the injury is within the ordinary knowledge of the jury. It is for the jury to decide if, taking into consideration all the facts and circumstances, Nordstrom was negligent in failing to provide a railing or other stabilizing device near the platform."); *see also Kuminkoski v. Daum*, 240 A.2d 524, 526 (Pa. 1968) (reversing judgment in defendant's favor when "plaintiff also charged the defendant with negligence in failing to provide a handrail in a situation where such an item would be required if the defendant was to honor its obligations to exercise reasonable care for the safety of its customers").

Defendants further counter that local, state, or other construction codes did not require railing at the premises. Compliance with "building codes and zoning ordinances may be evidence of . . . due care, but it is not conclusive that [Defendants] exercised due care as a matter of law."[49] Accordingly, code compliance does not vitiate Schick's claims at this stage. Summary judgment is denied as to Schick's premises-liability claims regarding the lack of a handrail/guardrail.

### c.    Door Signs

Schick also argues that "at the exit, the glass of the door was covered with various signs which would prevent the invitee from see[ing] through the glass doors."[50] But Schick "does not recall anything obstructing her view."[51] Nor does Schick adduce any testimony or other evidence that signs covered the door on the day of her accident. Because Schick does not adduce evidence that this dangerous or hazardous condition existed when she fell, summary judgment is granted in Carrols's favor as to Schick's premises-liability claims involving door signs.

### 2.    Claims Against Beaudette Construction Company

Beaudette argues that it is entitled to summary judgment on Carrols's and GBC's contribution and indemnity claims as well as Carrols's breach-of-contract claim because Schick has not created a genuine dispute of material fact on her underlying premises-liability claims. But as the Court explained above, genuine

---

[49] *Truax v. Roulhac*, 126 A.3d 991, 1001 (Pa. Super. Ct. 2015).
[50] Doc. 69 at 1; Doc. 71 at 1.
[51] Doc. 77-2 at 2.

disputes of material fact exist about the curb's color and the lack of a guardrail. Accordingly, Beaudette's motion for summary judgment is denied as to Carrols's and GBC's claims for contribution and indemnity on Schick's underlying premises-liability claims.  Beaudette's motion for summary judgment is also denied as to Carrols's breach-of-contract claim.

### 3.    Claims Against GBC Design

#### a.    Contribution

GBC moves for summary judgment as to Beaudette's and Carrols's contribution claims, in which Beaudette and Carrols allege that GBC negligently designed the subject curb.  "In the context of professional negligence, the plaintiff must prove that the defendant's conduct fell below the relevant standard of care applicable to the professional service at issue."[52]  "In most cases, this determination requires expert testimony because the negligence of a professional encompasses matters not within the ordinary knowledge and experience of laypersons."[53]

Notably, Beaudette and Carrols have not filed briefs opposing GBC's motion for summary judgment.  But "that does not automatically entitle [GBC] to summary judgment."[54]  Instead, the Court must determine "if the motion and supporting

---

[52] *Ins. Co. of Greater New York v. Fire Fighter Sales & Serv. Co.*, 120 F. Supp. 3d 449, 462 (W.D. Pa. 2015).

[53] *Id.*

[54] *Sears v. McCoy*, 815 F. App'x 668, 671 n.4 (3d Cir. 2020).

materials — including the facts considered undisputed — show that the movant is entitled to it."[55]

Here, GBC does not dispute that its curb design omitted a guardrail.[56] And as the Court explained above, a reasonable juror could conclude that this lack of a guardrail constitutes negligence. It follows that a reasonable juror could also conclude that GBC negligently omitted a guardrail from its curb design.

Indeed, Schick's expert Telatovich opined that Schick "was unable to adequately perceive the hazards due to the design" of the curb, which GBC provided.[57] Schick also opined that all Defendants, including GBC,[58] "should have appropriately designed the exit" by including a handrail/guardrail.[59] Viewing this expert report in the light most favorable to Carrols and Beaudette, a reasonable juror could conclude that GBC's design contributed to Schick's injuries.[60] Accordingly, GBC's motion for summary judgment is denied as to Beaudette's and Carrols's contribution claims.

---

[55] Fed. R. Civ. P. 56(e)(3).

[56] Doc. 64 at 5, 9.

[57] Doc. 71-2 at 8.

[58] *Id.* at 2, n.1.

[59] *Id.* at 8.

[60] *See Jones v. LA Fitness Int'l, LLC*, No. CIV.A. 11-0632, 2013 WL 3789807, at *8 (E.D. Pa. July 22, 2013) ("First, the Court holds that Mr. Jones, through the testimony of his expert Mr. Bernheim, has established some dispute of material fact as to whether the overall condition or design of the basketball court posed an unreasonable risk of harm to LA Fitness's basketball-playing members."); *see also Cater v. Starbucks Corp.,* No. CIV.A. 07-2660, 2010 WL 3195774, at *4 (E.D. Pa. Aug. 10, 2010) ("A genuine issue of material fact exists as to whether the icy conditions in the parking lot were the result of natural conditions. As stated above, both David Pogach and Mark Sauerbrey testified at their depositions that there was a problem with the design of the parking lot's drainage.").

### b.    Indemnity

GBC also moves for summary judgment as to Beaudette's indemnity claim. "Unlike contribution, which involves equal apportionment of liability among concurrent tortfeasors, indemnification shifts the entire loss from one party to another."[61]   In Pennsylvania, "indemnity is available only under the following circumstances: (1) where primary versus secondary or vicarious liability is present or (2) where there is an express contract to indemnify."[62]

Here, Beaudette does not adduce evidence of an express contract to indemnify.  Nor does Beaudette adduce evidence of a special relationship supporting an extra-contractual duty to indemnify.[63]   For example, Beaudette does not adduce evidence of an employer-employee or principal-agent relationship between itself and GBC.

Indeed, Beaudette does not brief this indemnity issue or otherwise file a response in opposition to GBC's motion for summary judgment.  In the absence of evidence to the contrary, Beaudette has failed to create a genuine dispute of material

---

[61]   *Richardson v. John F. Kennedy Mem'l Hosp.*, 838 F. Supp. 979, 989 (E.D. Pa. 1993).

[62]   *Id.*

[63]   *See Apple Am. Grp., LLC v. GBC Design, Inc.*, 294 F. Supp. 3d 414, 425 (W.D. Pa. 2018) ("The Court holds that GBC failed to state a plausible indemnity claim. GBC has not alleged that it had a legal relationship with Jackson Taylor, much less one that would require GBC to pay damages resulting from Jackson Taylor's negligence. Furthermore, GBC has not alleged that it had any special relationship with Jackson Taylor that would give rise to an extra-contractual duty to indemnify."); *see also Pennine Res., Inc. v. Dorwart Andrew & Co.*, 639 F. Supp. 1071, 1076 (E.D. Pa. 1986) ("I hold that the facts stated in Dorwart Andrew's third-party complaint do not suffice to state a claim for indemnity. Dorwart Andrew has alleged no contractual relationship or other legal obligation between it and Main Hurdman. The facts pleaded do not appear to be analogous to the typical indemnity situation.").

fact.   Accordingly, GBC's motion for summary judgment is granted as to Beaudette's indemnity claim.

## III.   CONCLUSION

Carrols's, Beaudette's, and GBC's motions for summary judgment are denied in part and granted in part.   An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge